**L. H. LACY COMPANY, Petitioner,**

v.

**The CITY OF LUBBOCK, Texas, Respondent.**

**No. B–6615.**

Supreme Court of Texas.

Nov. 23, 1977.

Bailey, Williams, Westfall, Lee & Fowler, James A. Williams, Dallas, for petitioner.

Fred O. Senter, Jr., City Atty., James P. Brewster, Asst. City Atty., Lubbock, for respondent.

GREENHILL, Chief Justice.

This case involves the validity of an arbitration award. We hold that when, as here, both parties participated in the arbitration proceedings, when neither party unequivocally withdrew its consent to arbitrate, and when the arbitration proceedings resulted in an award, the award is valid and enforceable under Texas common law.

The arbitration agreement in question here was contained in a construction contract. Because the Texas General Arbitration Act[1] exempts construction contracts from its coverage, the Act is not applicable here. However, historically, awards not enforceable under arbitration statutes have been upheld as valid common law awards,[2] and we therefore examine the validity of the present award under the common law.

The trial court, on the basis of stipulations between the parties, enforced the arbitration award and rendered judgment in favor of Lacy and against the City on all claims except certain interest awards. These awards of interest in favor of Lacy were eliminated from the arbitration award in the trial court's judgment.

Each of the parties appealed from that portion of the judgment which was adverse to it. The City's first contention, that the award was invalid under the statutes and at common law, was sustained by the Court of Civil Appeals; and that court reversed and rendered judgment vacating the arbiters' award. 546 S.W.2d 373. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The parties, Lacy and the City, entered into a written contract for the construction of runway and taxiway improvements to the Lubbock Regional Airport. The contract was drawn by the attorneys for the City and contained the following arbitration agreement:

## GC—54 ARBITRATION

All questions of dispute under this Agreement shall be submitted to arbitration at the request of either party to the dispute. The parties may agree upon one arbiter, otherwise, there shall be three, one named in writing by each party, and the third chosen by the two arbiters so selected; or if the arbiters fail to select a third within (10) days, he shall be chosen by a District Judge serving the County in which the major portion of the project is located, unless otherwise specified. Should the party demanding the arbitration fail to name an arbiter within the ten (10) days of the demand, his right to arbitrate shall lapse, and the decision of the Engineer shall be final and binding on him. . . .

The arbiters shall act with promptness. The decision of any two shall be binding on both parties to the contract, unless either or both parties shall appeal within ten (10) days from the date of the award by the arbiters, and it is hereby agreed that each party shall have the right of appeal and all proceedings shall be according to and governed by arbitration statutes of Texas. The decision of the arbiters upon any question submitted to arbitration under this contract shall be a condition precedent to any right of legal action. The decision of the arbiter or arbiters may be filed in court to carry it into effect.

The arbiters, if they deem the case demands it, are authorized to award the party whose contention is sustained, such sums as they deem proper for the time, expense and trouble incident to the Appeal, and if the Appeal was taken without reasonable cause, they may award dam-

---

1. Article 224 et seq. All statutory references are to Vernon's Texas Civil Statutes Annotated.

2. *Rector v. Hunter*, 15 Tex. 380 (1855); *Myers v. Easterwood*, 60 Tex. 107 (1883); *Carpenter v. North River Insurance Company*, 436 S.W.2d 549, 552 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.).

ages for any delay occasioned thereby. The arbiters shall fix their own compensation, unless otherwise provided by agreement, and shall assess the cost and charges of the arbitration upon either or both parties.

During the construction of the airport improvements, disputes arose in connection with the contract; and upon completion of the project, Lacy demanded arbitration pursuant to the above contract. Lacy, by letter, designated an arbiter. The City of Lubbock replied, and it also designated an arbiter. The City's letter also stated that its action was expressly ". . . without waiver of: (1) further consideration of the applicability of this particular dispute . . to the arbitration process set forth in the contract documents or at law; (2) its right to raise the question whether the arbitration clause in the contract document is subject to or qualified for arbitration within the terms of the Texas General Arbitration Act."

The arbiters selected a third arbiter for the panel in accordance with the arbitration agreement. Each party then submitted requested documents, a summary of contentions and positions as to the issues, and finally, a reply to the contentions of the other party. When the arbitration proceedings commenced, on October 28, 1974, in the Lubbock City Hall, the City presented a "Plea to the Jurisdiction" and various objections which were overruled by the arbiters. In its "Plea to the Jurisdiction," the City contended that since the provisions of the General Arbitration Act were not applicable to arbitration under this construction contract, that, under the terms of the arbitration agreement, there was no other authori-

ty for these arbitration proceedings. The City did not contend that there was no jurisdiction for common law arbitration proceedings, and the City at no time refused to participate in the proceedings.

After the arbiters overruled the Plea and objections, the City participated fully in the proceedings through the final award, but it maintained at all times that such participation was "subject to the jurisdictional pleas and objections." The arbiters recited this fact in their final award, which was favorable to Lacy. Each party paid one half of all expenses of the arbitration proceedings. The City then refused to honor the award, and Lacy has sued to enforce it.

Historically, the settlement of disputes by arbitration has been favored in Texas law. Early cases recognized arbitration as an approved and effective mode of trial,[3] and statutes have provided for arbitration since 1846.[4] Thus, a dual system of arbitration has existed in Texas, and the statutory method has been viewed as cumulative of the common law.[5]

A well-reasoned analysis of the historical co-existence of statutory and common law arbitrations was made in *Carpenter v. North River Insurance Co.,* 436 S.W.2d 549 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.), and the court correctly concluded that common law arbitration continues to be a viable alternative to the statutory method. The *Carpenter* case, like this one, involved an arbitration agreement outside the scope of the Texas General Arbitration Act. While the exclusions under that Act have been the subject

3. *Forshey v. Railroad Co.,* 16 Tex. 516, 539 (1856).

4. Acts 1846, p. 127, G.L. vol. 2, p. 1433. Until 1969, the Texas Constitution, Article 16, § 13, expressly directed the Legislature to enact such laws as may be necessary for arbitration. This section, along with a number of others, was repealed in an effort to delete obsolete and unnecessary provisions from the Constitution, and the legislative history indicates that one reason for repeal of this section was the fact that permissive arbitration has long been rec-

ognized at common law without the necessity of a constitutional provision authorizing arbitration statutes. Report of the Texas Legislative Council on Constitutional Revision. December 1960, Report 56–10, vol. 1, p. 122.

5. *See,* for example, *Ferguson v. Ferguson,* 93 S.W.2d 513 (Tex.Civ.App.—Eastland 1936, writ dism'd), *Bell v. Campbell,* 143 S.W. 953 (Tex. Civ.App.—Amarillo 1912, writ ref'd); Carrington, *The 1965 General Arbitration Statute of Texas,* 20 Sw.L.J. 21 (1966).

of a good deal of criticism,[6] extension of statutory arbitration is the role of the Legislature. In contracts not governed by the Act, this court's function is to judge the validity of arbitration agreements under such common law rules as may be relevant.

■ Under the traditional common law, courts have refused specific enforcement to agreements to arbitrate *future* disputes. Either party to an executory agreement providing for arbitration of future disputes has been allowed to revoke the agreement at any time before the arbitration proceeding resulted in an award. The only penalty for such revocation consisted of damages, if any, for breach of contract. *Deep South Oil Co. v. Texas Gas Corp.,* 328 S.W.2d 897 (Tex.Civ.App.—Beaumont 1959, writ ref'd n. r. e.), Dougherty & Graf, *Should Texas Revise Its Arbitration Statutes?*, 41 T.L.R. 229 (1962). The rationale behind these rules rested on a "public policy" argument against allowing private persons to oust the courts of their jurisdiction to determine the rights and liabilities of parties to a contract. This notion was a result of early English precedent which was transferred to the United States and to Texas through our adoption of the common law.[7] The doctrine has long since been abandoned in England by case law and by statute,[8] and an increasing number of American jurisdictions have rejected the rationale by adopting modern and comprehensive arbitration statutes. Coulson, *Texas Arbitration—Modern Machinery Standing Idle,* 25 Sw.L.J. 290, 291 (1971). The doctrine was evolved in an era when court congestion was not a major problem as it is today, and in modern times a policy encouraging agreements to arbitrate is preferable. In addition to alleviating some measure of the burden on the courts, arbitration in a commercial context is a valuable tool which provides business people, and all citizens, with greater flexibility, efficiency, and privacy. Coulson, *supra.* While it is unnecessary in this case to alter common law arbitration rules, the policy of refusing specific enforcement to executory arbitration agreements is not justifiable when the case fits within the common mold.

■ The arbitration award in the present case is valid and enforceable under the common law as heretofore expressed by Texas courts. Under even the earliest Texas cases, once the parties to a contract had submitted their disputes to arbitration and an award had been made, the parties were bound by the award if no fraud, mistake, or misconduct was involved. *Forshey v. Railroad Co.,* 16 Tex. 516 (1856), *Bell v. Campbell,* 143 S.W. 953 (Tex.Civ.App.—Amarillo 1912, writ ref'd.); *Florida Athletic Club v. Hope Lumber Co.,* 18 Tex.Civ.App. 161, 44 S.W. 10 (1898, not writ hist.). This rule has been applied to uphold executory agreements to arbitrate future disputes as well as agreements entered into after a dispute arose. *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740 (1943). The Court of Civil Appeals therefore erroneously concluded that the arbitration agreement in the present contract was void.

■ Furthermore, while contracting parties have been allowed to withdraw from executory arbitration agreements, such withdrawal must be unequivocal and must take place prior to the rendition of an award. In *Tejas Development Co. v. McGough Brothers,* 165 F.2d 276 (5th Cir. 1947), an attempt to withdraw after the arbiter had made a preliminary award was viewed as ineffective under the Texas common law. Similarly, in *Carpenter v. North River Insurance Co.,* 436 S.W.2d 549 (Tex. Civ.App.—Houston [14th Dist.] 1969 writ ref'd n. r. e.), the court rejected a contention that an effective withdrawal from arbitration had been made. In that case, the

6. Carrington, *The 1965 General Arbitration Statute of Texas,* 20 Sw.L.J. 21 (1966); Coulson, *Texas Arbitration—Modern Machinery Standing Idle,* 25 Sw.L.J. 290 (1971).

7. Art. 1, Vernon's Annotated Texas Statutes.

8. Dougherty & Graf, *Should Texas Revise Its Arbitration Statutes?* 41 T.L.R. 229, 230 (1962), *citing Scott v. Avery,* 5 H.S. 811, 10 Eng.Rep. 1122 (1856); New Arbitration Act, 1950, 14 Geo. 6, ch. 27, which superceded the Arbitration Act, 1889, 52 & 53 Vict. ch. 49.

attorney for the insurance company objected to the substitution of an arbiter and, at the date set for the hearing, appeared only in order to file a motion for continuance. The motion was denied and the hearing proceeded to an award. The Court of Civil Appeals upheld the award, reasoning that the motion for continuance was not an unequivocal indication of an intent to revoke the arbitration agreement. In so holding, the Court stated the rule that ". . . the award is presumed to have been made pursuant to an existing agreement until the complaining party sustains the burden of proving that it had withdrawn its agreement to arbitrate." 436 S.W.2d at 551.

■ The City here, as indicated by the trial court judgment, did not meet this burden of proof. By participating fully in the arbitration proceedings, the City failed to make the unequivocal withdrawal required to revoke the arbitration agreement. The City contends that it participated subject to "jurisdictional pleas and exceptions," but, as noted above, these pleas were not made with reference to common law arbitration. The fact that the City raised jurisdictional questions from the outset of these proceedings indicates its awareness that the statute was inapplicable and that common law arbitration was involved. Under established common law rules, the City could have revoked the arbitration agreement by simply refusing to participate in the proceedings. *Tejas Development Company v. McGough Brothers,* 165 F.2d 276 (5th Cir. 1947); *Murray v. United States Fidelity & Guarantee Co.,* 460 S.W.2d 212 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). Instead, the City chose to pursue arbitration, and in doing so the City did not exercise its opportunity to make a common law revocation.

■ The City further contends that the arbitration agreement indicated consent to arbitrate only under the Texas Arbitration Act. We do not agree. Furthermore, whether the parties had in view a statutory or a common law arbitration has been held immaterial if the proceedings could be upheld under either system. *Forshey v. Railroad Co.,* 16 Tex. 516, 538 (1856); *Bell v.*

*Campbell,* 143 S.W.2d 953, 955 (Tex.Civ. App.—Amarillo 1912, writ ref'd.).

As required, we have considered all other points contained in the City's brief in the Court of Civil Appeals but not reached by that court. We find no points which would require that the judgment of the Court of Civil Appeals be affirmed. *King v. Skelly,* 452 S.W.2d 691, 694 (Tex.1970), *Moulton v. Alamo Ambulance Service, Inc.,* 414 S.W.2d 444, 449 (Tex.1967).

■ The trial court declared invalid that part of the arbitration award which awarded Lacy damages in the nature of interest for delayed payment and that part giving Lacy interest on the amounts awarded on certain claims. The Court of Civil Appeals specifically overruled Lacy's appeal from this portion of the trial court judgment, and Lacy did not complain of this action in its motion for rehearing, or in its points of error before this court. We therefore lack jurisdiction to determine whether the trial court and the Court of Civil Appeals erred in this holding that part of the award is invalid. The remaining parts of the award are severable and distinct from the part held invalid. *Gulf Oil Corporation v. Guidry,* 160 Tex. 139, 327 S.W.2d 406, 408 (1959); 5 Am.Jur.2d 619, Arbitration and Award § 137.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.