NUMBER 13-05-497-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

GOLD RUSH, INC., SOUTH
EAST AMUSEMENTS, 

INC., AND LARRY SIMMONS, INDIVIDUALLY,             Appellants,

 

                                           v.

 

JAMES
WAYNE,                                                       Appellee.

 

 

 

 On appeal from the 24th District Court of Victoria
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

 Before Justices
Hinojosa, Rodriguez, and Garza

Memorandum Opinion by
Justice Rodriguez

 








This is
an appeal from an arbitration award in a written lease dispute between
appellee, lessor James Wayne, and appellants, lessees Gold Rush, Inc.,
Southeast Amusements, Inc., and Larry Simmons, individually.[1]  Appellants filed suit, and the case was
ordered to arbitration.  Following a three-day
arbitration hearing, the arbitrator entered an award against appellants and in
favor of appellee.[2]  Appellants moved to vacate the arbitration
award, and appellee filed an original petition to enforce it.  The trial court entered judgment affirming
the arbitration award and denied appellants' motion for new trial.  By three issues, appellants challenge the
arbitration award.  We affirm.

I.  Standard of Review and Applicable Law








Texas
has long favored arbitration as a means of disposing of pending disputes.  Prudential Sec. Inc. v. Marshall, 909
S.W.2d 896, 898 (Tex. 1995); Brazoria County v. Knutson, 142 Tex. 172,
176 S.W.2d 740, 743 (1943).  Generally,
an arbitration award is given the same effect as a final judgment of a court of
last resort.  See Nuno v. Pulido,
946 S.W.2d 448, 452 (Tex. App.BCorpus Christi 1997, no writ); House
Grain Co. v. Obst, 659 S.W.2d 903, 905‑06 (Tex. App.BCorpus Christi 1983, writ ref'd
n.r.e.).  "Arbitration awards are
favored by the courts to dispose of pending disputes; therefore, every
reasonable presumption will be indulged to uphold the arbitration
proceeding."  Nuno, 946
S.W.2d at 452.  While the trial court
must review an arbitrator's award with great deference, see Crossmark, Inc.
v. Hazar, 124 S.W.3d 422, 429 (Tex. App.BDallas
2004, pet. denied), we review a trial court's vacation, modification or
confirmation of an arbitration award de novo. 
Henry v. Halliburton Energy Servs., Inc., 100 S.W.3d 505, 508
(Tex. App.BDallas 2003, pet. denied).

Our
review of an arbitration award is "extraordinarily narrow."  Faulconer, Inc. v. HRI, Ltd. P'ship,
970 S.W.2d 36, 39 (Tex. App.BTyler 1998, no pet.).  Absent specific common law or statutory
grounds for vacating, modifying, or correcting an award, the reviewing court
must confirm it.  See Tex. Civ. Prac. & Rem. Code Ann. ' 171.087 (Vernon 2005); Callahan &
Assocs. v. Orangefield Indep. Sch. Dist., 92 S.W.3d 841, 844 (Tex. 2002); J.J.
Gregory Gourmet Servs. v. Antone's Import Co., 927 S.W.2d 31, 33 (Tex. App.BHouston [1st Dist.] 1995, no writ)
(concluding that in the absence of a statutory or common law ground to vacate
or modify an arbitration award, a reviewing court lacks jurisdiction to review
other complaints, including the sufficiency of the evidence to support the
award).








The
Texas General Arbitration Act permits courts to set aside arbitration awards
only in limited circumstances.  See
Tex. Civ. Prac. & Rem. Code Ann.
'' 171.001-.098 (Vernon 2005).  A court may vacate an arbitration award on
statutory grounds if  (1) the award was
procured by fraud, corruption, or other undue means, (2) a party was prejudiced
by the evident partiality, or by the corruption, misconduct, or willful
behavior of the arbitrator, (3) the arbitrator exceeded his power, (4) the
arbitrator refused to postpone the hearing, refused to hear evidence material
to the controversy, or otherwise conducted the hearing in a manner so as to
substantially prejudice the rights of a party, or (5) if there was no valid
arbitration agreement, the issue was not adversely determined in a proceeding
to compel or stay arbitration, and the complaining party did not participate in
the arbitration hearing without raising an objection.  Id. '
171.088(a); Crossmark, 124 S.W.3d at 430.

An
award is also required to be vacated under common law standards when it is
tainted with "fraud, misconduct or such gross mistake as would imply bad
faith or failure to exercise an honest judgment."  Nuno, 946 S.W.2d at 452; Anzilotti
v. Gene D. Linnin, Inc., 899 S.W.2d 264, 266 (Tex. App.BHouston [14th Dist.] 1995, no writ).  However, as this Court has recognized, a mere
mistake of fact or law is insufficient to set aside an arbitration award.  Nuno, 946 S.W.2d at 452; see Women's
Reg'l Healthcare, P.A. v. Fempartners of N. Tex., Inc., 175 S.W.3d 365,
367-68 (Tex. App.BHouston [1st Dist.] 2005, no pet.)
(setting out that review of an arbitration award is so limited that it cannot
be vacated "even if there is a mistake of fact or law").

II.  Refusal to Postpone Arbitration Hearing








By
their second issue, appellants seek to vacate the arbitration award because the
arbitrator refused to postpone the arbitration hearing in Simmons's
absence.  Appellants contend that they
were greatly prejudiced by Simmons's absence, having a judgment entered against
them for a substantial amount of money after a hearing that Simmons was not
allowed to attend.  They assert that they
were deprived of the basic due process right to be present to face their
accuser, to confer with their attorney on strategy during the arbitration, and
to testify in person so that credibility could be judged by the arbitrator.

Section
171.088(a)(3)(B) of the civil practices and remedies code provides that
"the court shall vacate an award if . . . the arbitrators . . . refused to
postpone the hearing after a showing of sufficient cause for the postponement .
. . ."  Tex. Civ. Prac. & Rem. Code Ann. ' 171.088(a)(3)(B) (Vernon 2005).[3]  "Although there are no cases
interpreting 'sufficient cause for postponement' under section
171.088(a)(3)(B), the grounds a court would find sufficient to support a motion
for continuance in a trial court are instructive in this context."  Hoggett v. Zimmerman, 63 S.W.3d 807,
811 (Tex. App.BHouston [14th Dist.] 2001, no pet.).













A trial
court is not required to grant a motion for continuance simply because a party
is unable to be present at trial.  Hawthorne
v. Guenther, 917 S.W.2d 924, 929 (Tex. App.BBeaumont
1996, writ denied).[4]  Moreover, Texas courts have repeatedly held
that a trial court does not abuse its discretion by denying a motion for
continuance on the basis of a party's health, unless there is a supporting
affidavit from medical personnel stating it is impossible, from a medical
standpoint, for the party to appear in court or that it would endanger the
party's health to appear in court.  See
Olivares v. State of Tex., 693 S.W.2d 486, 490 (Tex. App.BSan Antonio 1985, writ dism'd) (per
curiam) (holding that in the absence of proof in the form of a medical
personnel affidavit that it would endanger the party's health to appear in
court, the trial court did not abuse its discretion by denying a continuance); Hawthorne,
917 S.W.2d at 929-30 (concluding there was no abuse its discretion when motion
for continuance was denied because a party who allegedly could not appear at
trial due to "emotion[al] distress and substance abuse" attached no
affidavit of a doctor; letters from doctors are insufficient to warrant
continuance); see also Tex. R.
Civ. P. 251 ("No application for a continuance shall be heard
before the defendant files his defense, nor shall any continuance be granted
except for sufficient cause supported by affidavit, or by consent of the
parties, or by operation of law.").

On
Wednesday of the week prior to the arbitration date, counsel for appellants
provided the arbitrator and appellee's counsel with the following letter
addressed to the case manager of the American Arbitration Association.  The letter, dated July 8, 2004, reads as
follows:

Please
be advised that I have been informed as of this morning, July 7, 2004, that Mr.
Larry Simmons'[s] doctor is refusing permission to allow Mr. Simmons to travel
to the arbitration in Texas.  Apparently,
Mr. Simmons has a long standing heart/diabetic condition, and his doctor is not
allowing any accommodations for travel.

 

I would
ask that we schedule a hearing immediately to discuss the ramifications of this
latest tern [sic] of events.  I will be
in Houston on July 8, 2004 all day long. 
I am available Friday afternoon. 
Please contact me at your earliest convenience.

 

Ps:     In
the event that [the arbitrator] has any questions regarding Mr. Simmon's
ability to travel, he may wish to contact Mr. Simmon's opthamologist [sic]. . .
.

To
support their motion for continuance, appellants offered only counsel's letter
regarding Simmon's inability to be present at the hearing.  Appellants offered no affidavit establishing
Simmons's inability to travel to the arbitration hearing.  Appellants assert the following:

While case law is instructive as to what
constitutes good cause, it is not instructive as to the procedures that
must be followed in an arbitration. 
Parties to an arbitration are certainly not bound by the requirements of
affidavits, sworn testimony, and such technicalities as in a court of law, and
the Arbitration Act does not provide so. 
Otherwise, the informality and efficiency that is the very purpose of
arbitration, would be lost.

 








(Emphasis in
original.)  Appellants provide no
authority for this contention, and we find none.  Nonetheless, even were we to conclude that
appellants were not required to provide a medical affidavit, appellants
established only that Simmons was unable to be present at the arbitration
hearing and that he apparently had a health condition.  As instructed by continuance law, this is not
enough to establish sufficient cause. 
While stating that Simmons apparently had a long standing health
condition, see, e.g., Campbell v. Fort Worth Bank & Trust, 705
S.W.2d 400, 402 (Tex. App.BFort Worth 1986, no writ) (providing that
statements made to the best of the witness's knowledge "constitute no
evidence at all"), and offering the physician's contact information to the
arbitrator, counsel provided no additional information regarding matters such
as why the doctor refused to allow Simmons to travel to Texas, why the refusal
came only a week before the hearing, or how the travel would endanger his
health.

Additionally,
"[w]hen a motion for continuance is based on the absence of a party, there
must be a showing of diligence in attempting to obtain the required
testimony."  Humphrey v.
Ahlschlager, 778 S.W.2d 480, 483 (Tex. App.BDallas
1989, no writ).  The matter of Simmons's
health was raised approximately one week before the hearing.  According to appellant's counsel, Simmons
apparently had long-standing health problems that could have been considered
earlier in the arbitration process.  We
also note that the arbitrator's offer to have Simmons testify by telephone was
refused by appellants' counsel.








Accordingly,
we conclude appellants did not establish sufficient cause for the postponement
of the arbitration hearing.  Appellants'
second issue is overruled.

III.  Prejudiced by Evident Partiality

By
their third issue, appellants contend that the arbitrator was partial toward
appellee and prejudiced against appellants. 
Section 171.088(a)(2)(A) provides that a court shall vacate an
arbitration award if the rights of a party were prejudiced by evident
partiality by an arbitrator appointed as a neutral arbitrator.  Tex.
Civ. Prac. & Rem. Code Ann. ' 171.088(a)(2)(A) (Vernon 2005).

Appellants
claim that the source of the prejudice against them was an April 21, 2004
letter sent to the arbitrator by an attorney who had previously represented
appellants in the same matter.  The
letter was written by appellants' former counsel and to appellants' present
counsel.  It was copied to Simmons,
appellee's counsel, and the arbitrator.

Reiterating
matters with respect to a scheduled April 19, 2004 arbitration hearing,
appellants' former counsel wrote to appellants' present counsel that on the
morning of April 19, "you told me that Larry Simmons had led you to
believe there was only to be a telephone conference, as opposed to the
evidentiary hearing, and therefore you were surprised and unaware that an
actual hearing was scheduled [for April 19th]."  Appellants' former counsel continued that on
April 20th "I was told that you blamed me for misleading you, or failing
to advise you of the scheduled hearing. . . ."  He also wrote the following:








The arbitrator, your opposing counsel,
your client, and you, all know that is not true, and that I am in no way
responsible for whatever confusion resulted in your being surprised and
unaware. I heard [the arbitrator] tell Larry Simmons the hearing was scheduled
for April 19, but he would postpone it if Larry wanted.  Larry told [the arbitrator] he was going to
hire you and asked me to keep the file until I received instructions from him.

 

Finally, after
expressing his concerns and frustrations and detailing what transpired during
the transfer of this case, appellants' former counsel concluded the letter as
follows:

This
will be the last communication I will ever have with you on any subject,
whether it be verbal, written, or telepathic. 
I cannot speak for everyone else over here, but I can tell you that any
further communication with the firm concerning business and client related
matters must now be in writing. 

The
referenced April 19th hearing was re-scheduled, and it is undisputed that the
letter was received by the arbitrator prior to the arbitration hearing which
began on July 12, 2004.  Because the
arbitrator received and reviewed the letter, appellants requested that the
arbitrator recuse himself from the case. 
He refused to do so.








Appellants
contend that such refusal prejudiced appellants throughout the proceedings when
the arbitrator: (1) overruled their motion for continuance; (2) admitted
appellee's evidence over objections; (3) required appellants to present
witnesses out of order and to present their defense before appellee concluded
his case-in-chief; (4) excluded appellant's expert report; and, (5) entered a
judgment contrary to all evidence.  They
argue that the letter was inappropriate outside influence by a third party who
had no genuine interest in the case. 
Appellants contend that their former attorney's accusation obviously
tainted the arbitrator's view of appellants and their credibility.[5]  We disagree.

While
the letter suggests that Simmons made untrue statements concerning a scheduled
April 19th arbitration hearing, it is best characterized as a letter expressing
one attorney's displeasure with another attorney.  It indicates that animosity existed between
appellants' current counsel and their former counsel.  We cannot conclude further that the letter
impugned on appellants' character, if at all, in such a manner as to prejudice
his rights by evident partiality by the arbitrator.  We overrule appellants' third issue.

IV.  Arbitrator Misconduct

By
their first issue, appellants assert that the arbitrator's award constitutes
misconduct.  Section 171.088(a)(2)(C)
provides that the trial court "shall vacate an award if the rights of a
party were prejudiced by misconduct or wilful misbehavior of an
arbitrator."  Tex. Civ. Prac. & Rem. Code Ann. ' 171.088(a)(2)(C) (Vernon 2005).  Under common law standards, an award must be
vacated when it is tainted with misconduct. 
Nuno, 946 S.W.2d at 452. 
"Statutory arbitration is merely cumulative of the common
law."  Anzilotti, 899 S.W.2d
at 266.








Appellants
contend that the arbitrator erroneously interpreted the lease by implicitly
concluding that it authorized Wayne to accelerate the rent upon appellants'
failure to timely pay the May 2003 rent. 
They assert that they did not breach the lease but rather complied with
the lease and were not in default after the attempted cure.  Appellants contend that this so affected
their rights that it deprived them of a fair hearing.

"An
award can be vacated based on misconduct only if the conduct so affects the
rights of the party that it may be said to deprive him of a fair hearing.  Only in extreme cases will a court vacate an
award because of misconduct." GJR Mgmt. Holdings, L.P. v. Raus, 126
S.W.3d 257, 262 (Tex. App.BSan Antonio 2003, pet. denied).  However, "[a] mere mistake of fact or
law is insufficient to set aside an arbitration award; only those errors of
fact or law that result in a fraud or some great and manifest wrong and
injustice warrant setting aside an arbitration award."  Nuno, 946 S.W.2d at 452.

It is
undisputed that appellants failed to timely pay the rent that was due on May
1st.  Appellants received appellee's
notice of default on May 11th.  On or
about May 12th, appellants attempted to cure the default by offering tender of
the May rent, the late charge, and penalties. 
Appellee refused the amount tendered. 
Rather, he declared the lease in default and accelerated future rents in
the amount of $36,500.00.

The
lease provides, in relevant part, the following:








14.     TENANT
DEFAULT AND REMOVAL OF ABANDONED PROPERTY. 
If tenant abandons the premises or otherwise defaults in the
performance of any obligations or covenants herein, Landlord may enforce the
performance of this lease in any manner provided by law.  This lease may be terminated at Landlord's
discretion if such abandonment or default continues for a period of 10 days
after Landlord notifies Tenant of such abandonment or default and of Landlord's
intention to declare this lease terminated. 
Such notice shall be sent by Landlord to Tenant at Tenant's last known
address by certified mail.  If Tenant has
not completely removed or cured default within the 10-day period, this lease
shall terminate. . . .  Upon
abandonment or default by the Tenant, the remaining unpaid portion of the
rental from paragraph 4[6]
herein, shall become due and payable. . . .

 

* * * * *

 

14.     TENANT DEFAULT AND REMOVAL OF ABANDONED
PROPERTY.  Continuation.  Notwithstanding any of the other provisions
of paragraph 14, to the contrary, failure to pay any installment of rent,
and such failure shall continue for ten (10) days shall be a default; and,
Landlord shall have the immediate right, without any notice, to immediately
terminate the lease and/or exercise any, other rights or remedies which he may
have by contract or operation of law.

(Emphasis added.)








The
continuation paragraph 14 of the lease specifically defines default as a ten
day delinquency in making a rent payment. 
It expressly provides, notwithstanding other provisions of paragraph 14,
that upon such default appellee shall have the right to terminate the lease
without any notice.  Paragraph 14 also
provides that appellee has the right to accelerate the remaining rent upon such
default.  The lease gave appellee the
right to accelerate the rent upon appellants' failure to timely pay its May
2003 rent.  The arbitrator did not find
this operating agreement ambiguous, and we likewise agree that it is not.  Therefore, we conclude that because the
arbitrator correctly interpreted the lease, there was no misconduct on his part
that so affected the rights of appellant that it deprived him of a fair
hearing.[7]  See GJR Mgmt., 126 S.W.3d at 262; see
also Seagull Energy E&P, Inc. v. Eland Energy, Inc., 2006 Tex.
LEXIS 550, at *5‑*6 (Tex. 2006) (setting out that a contract is not
ambiguous merely because the parties disagree on its meaning and that an
ambiguity exists only if the contract language is susceptible to two or more
reasonable interpretations); Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983) ("If the written instrument is so worded that it can be given a
certain or definite legal meaning or interpretation, then it is not ambiguous
and the court will construe the contract as a matter of law.").








Challenging
the sufficiency of the evidence, appellants also contend that even if appellee
had the right to accelerate future rents, he failed to show any causation
between the alleged damages to the leasehold and any responsibility on behalf
of appellants.  We have found no
statutory or common law ground to vacate this arbitration award; therefore, we
lack jurisdiction to review other complaints, including the sufficiency of the
evidence to support the award.  See
J.J. Gregory, 927 S.W.2d at 33; Nuno, 946 S.W.2d at 452.  Accordingly, we overrule appellants' first
issue.

V.  Conclusion

The
judgment of the trial court is affirmed.

 

NELDA V. RODRIGUEZ

Justice

 

Memorandum Opinion delivered and

filed this the 27th day of
July, 2006.











[1]Adam Foust and Infinity
Communications Technologies, Inc., defendant and plaintiff respectively, are
named below but are not identified as parties to this appeal.





[2]Paragraph A of the
lease's arbitration clause reads, in relevant part, as follows:

 

Any controversy or claims
arising from or related to this Lease or the breach thereof and/or any Property
subject to this Lease shall be settled by binding arbitration administered by
the American Arbitration Association under its Arbitration Rules for the Real
Estate Industry and judgment on the award rendered by the arbitrator(s) may be
entered in any court having jurisdiction thereof.  If any party to this Lease has a controversy
relating to the interpretation of this Lease or relating to any other claim,
between them, they agree to submit the dispute to arbitration in accordance
with the procedures of the American Arbitration Association in Houston, Texas,
then in effect, and the parties covenant that the arbitration proceedings shall
be conducted in Victoria County, Texas.

 

The lease also provides
that Texas law applies.  Neither party
disputes the Texas General Arbitration Act is controlling.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 171.001-.098 (Vernon 2005).





[3]Rule 28 of the American
Arbitration Association's Arbitration Rules for the Real Estate Industry
provides that an arbitrator may postpone any hearing "for good cause
shown."  American Arbitration
Association, Arbitration Rules for the Real Estate Industry, Rule 28.





[4]Rule 32 of the American
Arbitration Association's Arbitration Rules for the Real Estate Industry
similarly provides the following:

 

32.  Arbitration in the Absence of a Party or
Representative

 

Unless the law provides
to the contrary, the arbitration may proceed in the absence of any party or
representative who, after due notice, fails to present or fails to obtain a
postponement.  An award shall not be made
solely on the default of a party.  The
arbitrator shall require the party who is present to submit such evidence as
the arbitrator may require for the making of an award.

 

American Arbitration Association, Arbitration
Rules for the Real Estate Industry, Rule 32.

 

 





[5]Appellants also contend
that the arbitrator's refusal to recuse himself constitutes misconduct or
wilful misbehavior that prejudiced appellants throughout the proceedings.  Appellants rely on Mullinax, Wells, Baat
and Cloutman v. Sage, 692 S.W.2d 533 (Tex. App.BDallas 1985, writ ref'd
n.r.e.), to support this contention.  Sage
involved alleged arbitrator "misconduct" wherein the clients
complained that an award of attorney's fees was made before they were afforded
the opportunity to contest certain evidence or to cross-examine the attorneys
on this evidence.  See id. at
535.  Sage did not involve a claim
of "evident partiality."  In
this issue, other than the use of the word "misconduct" and
"wilful misbehavior," there is no suggestion by appellants that the
arbitrator engaged in misconduct or wilful behavior with respect to the letter;
conduct or behavior that would justify vacation of the arbitration award.  See id. 
Thus, under the facts of this case appellants' reliance on Sage
is misplaced.





[6]Paragraph 4 provides the
following:

 

RENT.  Tenant agrees to and
shall pay Landlord . . . as rent for the leased premises, the total sum of
$45,125.00, payable without demand in equal monthly payments of $[3,125.00],
each in advance on or before the 1st day of each month, commencing on FEBRUARY
4, 2002, and continuing thereafter until the total sum shall be paid. . .
.  Rent received after the first day of
the month shall be deemed delinquent.  If
rent is not received by Landlord by the 5th of each month, Tenant shall pay a
late charge of $350.00 plus a penalty of $35.00 per day until rent is received
in full. 





[7]Appellants also contend
that the arbitrator's award for unpaid rents and damages to the leasehold
constitutes a gross mistake, compelling its vacation.  Having concluded, however, that there was no
misconduct on the part of the arbitrator, assuming without deciding appellants
could rely on "gross mistake" to attack the arbitrator's award, we
would also conclude there was no gross mistake under the facts of this
case.  See Callahan &
Assoc. v. Orangefield Indep. School Dist., 92 S.W.3d 841, 844 (Tex. 2002)
(per curiam) (citing Teleometrics Int'l, Inc. v. Hall, 922 S.W.2d 189,
193 (Tex. App.‑Houston [1st Dist.] 1995, writ denied) for the proposition
that gross mistake, as a common law ground for setting aside an arbitration
award, is a mistake that implies bad faith or failure to exercise honest
judgment, the supreme court assumed without deciding that OISD may rely on the
gross mistake standard under the common law to attack the arbitrator's award
and concluded that an arbitrator does not violate the common law simply by
failing to award damages).